IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STACY MESSICK, et al.,                :

    Plaintiffs,                       :

v.                                    :
                                            Civil Action No. GLR-14-2690
BOARD OF EDUCATION OF                 :
WICOMICO COUNTY, et al.,
                                   :

    Defendants.                       :

**MEMORANDUM OPINION**

Pending before the Court is Defendant Judith Bresler's Motion for More Definite Statement (ECF No. 14), Defendants Wicomico County Board of Education (the "Board"), current and former Board members Marvin Blye, Tyrone Chase, Larry Dodd, Carolyn Elmore, Donald Fitzgerald, Ronald Willey, Michelle Wright, and Cathy Townsend's (collectively the "Board Defendants") Motion to Dismiss or in the Alternative for Summary Judgment (ECF No. 15), and Defendant John E. Fredericksen's Motion to Dismiss or in the Alternative for Summary Judgment (ECF No. 16). Pro se Plaintiffs Stacy Messick and Stephanie Moses's response was due November 26, 2014. (See ECF No. 31). To date, Plaintiffs have not filed a response. Accordingly, Defendants' Motions will be considered unopposed. No hearing is necessary. See Local Rule 105.6 (D.Md. 2014). For the reasons set forth below, Fredericksen and the Board Defendants' Motions

1

for Summary Judgment will be granted and Bresler's Motion for More Definite Statement will be denied as moot.

## I. BACKGROUND

### A. Factual Background

On November 1, 1995, Moses accepted employment with the Wicomico County Public School System ("WCPS") as a Personnel Specialist. She was later promoted and re-classified as the Coordinator of Human Resources. In that capacity, Moses was required to meet, negotiate, and work cooperatively with employees of the WCPS, as well as heads of bargaining units and Union Representatives. Prior to September 2011, Moses's job performance was generally satisfactory.

Messick is an adult female born in 1980. On July 20, 2009, she began working for the WCPS as the Coordinator of Employee Relations. In that capacity Messick was also required to meet, negotiate, and work cooperatively with employees of the WCPS, as well as heads of bargaining units and Union Representatives. Prior to September 2011, Messick's job performance was generally satisfactory.

Messick alleges, beginning in July 2010, Defendant John E. Fredericksen, Ph. D., Superintendent of the WCPS, harassed and discriminated against her by continually questioning her work performance and educational credentials based on her age and sex. She further alleges she was issued a disciplinary

Memorandum on September 28, 2011 (the "September 28 Memorandum"), which underscored this ongoing harassing behavior and disparate treatment.  Messick submitted to the Board a rebuttal to the September 28 Memorandum and requested that it be removed from her file.

Moses similarly alleges there were no documented concerns with her job performance until September 29, 2011, when Fredericksen issued her a disciplinary Memorandum (the "September 29 Memorandum") citing his displeasure with her handling of the potential hiring of an employee.  Moses also submitted to the Board a rebuttal to the September 29 Memorandum and requested that it be removed from her file.  Plaintiffs collectively allege, however, the Board denied them unspecified rights afforded to all other employees facing potential disciplinary action.

On October 18, 2011, Plaintiffs met with Dave White, President of Wicomico County Education Association, to discuss the budget, personnel issues, upcoming negotiations, and the county council. White later relayed to Fredericksen that, during this meeting, Plaintiffs continuously changed the subject to topics such as: (1) Plaintiffs' insistence that White assist them in an attempt to thwart Fredericksen's contract renewal efforts; (2) Plaintiffs' attempts to persuade White to delay the implementation of Fredericksen's upcoming media campaign; and

3

(3) Fredericksen's alleged affair with the former President of the Board.

On October 25, 2011, Plaintiffs filed a formal appeal and discrimination complaint with the Board concerning the September 28 and 29 Memoranda, reiterating their request that the Memoranda be removed from their files and requesting that Fredericksen's discriminatory actions cease.  In conjunction with requesting a formal administrative appeal, Plaintiffs demanded that the Board instruct Fredericksen to refrain from directly addressing them in any supervisory capacity without the involvement of Cathy Townsend, Assistant Superintendent of the WCPS.  Plaintiffs allege the Board discriminated and retaliated against them by not promptly and fairly investigating their appeal.[1]

On December 5, 2011, Fredericksen notified Plaintiffs that he became aware of, and was extremely concerned about, the content of Plaintiffs' October 18, 2011 meeting with White.  He advised Plaintiffs that disciplinary action may result.  On December 9, 2011, Plaintiffs filed a charge of discrimination with the Equal Employment Opportunity Commission on the basis of sex and age discrimination and retaliation.

---

[1] Plaintiffs concede the Board ultimately hired an outside investigator to investigate their complaints, but allege the investigation was neither neutral nor thorough.

On December 28, 2011, Plaintiffs met with Fredericksen to discuss the content of, and Fredericksen's concern with, Plaintiffs' October 18, 2011 meeting with White. Despite Plaintiffs having denied making an attempt to thwart his authority as Superintendent, Fredericksen placed Plaintiffs on administrative leave following the December 28, 2011 meeting. Plaintiffs contend they were unfairly denied an opportunity to respond to Fredericksen's accusations prior to being placed on administrative leave. Further, that this depravation was inconsistent with other disciplinary matters handled by the Board.

On January 11, 2012, Plaintiffs received termination letters. Fredericksen advised Plaintiffs that he found White to be credible in reporting Plaintiffs' wish to sabotage his chances for reappointment as Superintendent, intent to delay a school media project he had desired, and spreading false rumors about his alleged affair with another Board member. As a result, Fredericksen lost the necessary faith, trust, and confidence that Plaintiffs, as senior members of his leadership team, were interested in working with him in a team-oriented manner. The termination letters outlined, as the reason for Plaintiffs' terminations, Fredericksen's inability to work with Plaintiffs because of their continued attempts to undermine his authority as Superintendent.

On August 20, 2014, Plaintiffs filed their Complaint pro se alleging sex and age discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e-16 et seq. (2012) and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 633a et seq. (2012) (Counts I,II), violations of the Civil Rights Act of 1991, 42 U.S.C. §§ 1983, 1985 (2012) (Count III), and violations of various state law torts, including Intentional Infliction of Emotional Distress (Count IV), Invasion of Privacy (Count V), False Light (Count VI), and wrongful termination (Count VII).

**B.   Procedural Background**

On October 14, 2014, Bresler filed a Motion for More Definite Statement (ECF No. 14), the Board Defendants filed a Motion to Dismiss or in the Alternative for Summary Judgment (ECF No. 15), and Fredericksen filed a Motion to Dismiss or in the Alternative for Summary Judgment (ECF No. 16).  On October 15, 2014, as a courtesy to Plaintiffs, the Clerk's office issued Rule 12/56 Letters advising them of their duty to respond to the Motions within seventeen days of the date of the Rule 12/56 Letters. (ECF No. 17).

On October 24, 2014, Plaintiffs moved for a ninety-day extension of time to obtain counsel in this matter. (ECF No. 28).  Upon consideration of Plaintiffs' Request for Extension of Deadline for Response to Defendants' Motions, the Court granted

in part and denied in part Plaintiffs' Request. (ECF No. 31). Plaintiffs were granted an extension of time, up to and including November 26, 2014, to file responses to Defendants' Motions. (See id.).

On November 6, 2014, Plaintiff filed a Motion to Stay pending the outcome of the Department of Justice's ("DOJ") review of their charge of retaliation brought against Defendants. (ECF No. 33). The Court denied Plaintiffs' Motion for Stay on November 13, 2014. (ECF No. 36).

In lieu of responding to Defendants' pending Motions on November 26, 2014, Plaintiffs filed a Request for Continuance. (ECF No. 37). On November 25, 2014, Plaintiffs received Right-To-Sue letters from the DOJ and contend they are entitled to a ninety-day continuance to amend their Complaint with their claims of retaliation. (See id.). The Court denied Plaintiffs' Request for Continuance on December 16, 2014. (ECF No. 42). Thus, Plaintiffs' response was due by November 26, 2014. To date, Plaintiffs have not filed a response. Accordingly, Defendants' Motions will be considered unopposed.

## II. DISCUSSION

A. **Standard of Review**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must set forth "a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl.

7

Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 556. "In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

"When matters outside the pleading are presented to and not excluded by the court, the [12(b)(6)] motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 260-61 (4th Cir. 1998) (alteration in original) (quoting Fed.R.Civ.P. 12(b)) (internal quotation marks omitted). Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a).

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970)). Once a motion for summary judgment is properly made and

8

supported, the opposing party has the burden of showing that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48 (alteration in original).

A "material fact" is one that might affect the outcome of a party's case. Id. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265.

Here, because the Court will consider matters outside of the pleading, Defendants' Motions will be construed as Motions for Summary Judgment.[2]

---

[2] The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion. First, the "parties [must] be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment" and, second, "the parties [must] first be afforded a reasonable opportunity for

B.  **Analysis**

As a preliminary matter, Messick's claim of age discrimination will be dismissed.  The discrimination prohibited by the ADEA is limited to those who are 40 or older.  29 U.S.C. § 631(a) ("The prohibitions in this chapter shall be limited to individuals who are at least 40 years of age."); see also O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312 (1996) (explaining the same).  Messick was born in 1980 and, therefore, is outside the protected class.  Accordingly, Messick's claim of discrimination under the ADEA will be dismissed with prejudice.

Further, to the extent Plaintiffs allege the individually named members of the Board are liable in their individual

---

discovery." Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt., 721 F.3d 264, 281 (4th Cir. 2013) (quoting Gay v. Wall, 761 F.2d 175, 177 (4th Cir. 1985)) (internal quotation marks omitted).  The alternative caption of Defendants' Motions and the attached exhibits are sufficient indicia that the Motions might be treated as ones for summary judgment. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005).

Once notified, "summary judgment is appropriate only after 'adequate time for discovery.'" Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  The failure to file an affidavit specifying legitimate needs for discovery "is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." Nguyen v. CNA Corp., 44 F.3d 234, 242 (4th Cir. 1995) (quoting Paddington Partners v. Bouchard, 34 F.3d 1132, 1137 (2d Cir. 1994)) (internal quotation marks omitted).  Here, because Plaintiffs have failed to specify a need for discovery, construing Defendants' Motions as ones for summary judgment is appropriate.

10

capacities for sex discrimination in violation of Title VII, those allegation will be dismissed with prejudice.  Title VII does not impose liability on an employer's agent in their individual capacities.[3]  See Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 510 (4th Cir. 1994) (excluding the employer's agent from the definition of the term "employer" under the ADEA); see Lissau v. S. Food Serv., Inc., 159 F.3d 177, 180 (4th Cir. 1998) (analyzing the Title VII definition of employer in the same fashion as the ADEA definition of employer).  Accordingly, the individually named members of the Board cannot be held liable in their individual capacities under Title VII.

Next, the Complaint fails to make clear whether Plaintiffs' claims of sex discrimination are brought under a wrongful discharge or disparate treatment theory of discrimination.  This distinction informs the prima facie proof necessary to establish sex-based discrimination.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 n.13 (1973) (explaining that the prima facie proof necessary to establish sex-based discrimination will vary with respect to differing factual situations).  In construing the Complaint in the light most favorable to Plaintiffs, the

---

[3] To the extent Plaintiffs allege the individually named members of the Board are liable in their individual capacities for sex discrimination in violation of their right to equal protection under § 1983, the Eleventh Amendment does not shield state officials, sued in their individual capacities, from personal liability.  Hafer v. Melo, 502 U.S. 21, 31 (1991).

Court finds Plaintiffs have sufficiently alleged, and Defendants have failed to dispute, a prima facie case of wrongful termination.[4]

To show a prima facie case of wrongful termination, Plaintiffs are required to establish that they (1) are members of a protected class; (2) suffered an adverse employment action; (3) were performing their jobs at a level that met their employer's legitimate expectations at the time of their discharge; and (4) the position was filled by similarly qualified applicants outside the protected class. Scott v.

---

[4] Defendants argue Plaintiffs fail to present sufficient evidence of similarly situated employees outside the protected class being treated differently. The Court agrees that Plaintiffs' general allegations of being subjected to harsher discipline than any other employees for the same or comparable offenses falls short of their burden to establish that male comparators were disciplined less harshly for similar violations under a disparate treatment theory. See Lightner v. City of Wilmington, N.C., 545 F.3d 260, 265 (4th Cir. 2008) ("The similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful."). Nevertheless,

> a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

Estelle v. Gamble, 429 U.S. 97, 106 (1976) (quoting Haines v. Kerner, 404 U.S. 519, 520-21 (1972)) (internal quotation marks omitted); see discussion supra (finding unopposed, prima facie allegations of wrongful discharge).

Health Net Fed. Servs., LLC, 463 F.App'x 206, 208 (4th Cir. 2012) (citing Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir.2004) (en banc)). Plaintiffs satisfy the first two elements of wrongful termination, as women who were terminated from their respective positions. Further, Plaintiffs allege, and Defendants have failed to dispute, generally satisfactory job performance and, upon their termination, male replacements.

Because Plaintiffs offer no direct evidence of discrimination, however, the adjudication of their wrongful discharge claims must be analyzed under the proof scheme articulated in McDonnell Douglas. See Hill, 354 F.3d at 285-86 (employing the McDonnell Douglas framework to analyze a discrimination claim based principally on circumstantial evidence). Under the McDonnell Douglas standard, once a plaintiff has meet her burden of establishing a prima facie case of discrimination, a defendant can rebut the presumption of discrimination raised by the prima facie case by establishing a legitimate, nondiscriminatory reason for the termination. Id. at 285. Once a defendant succeeds in doing so, plaintiffs must then "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981) (citing

McDonnell Douglas, 411 U.S. at 804). Plaintiffs bear "the ultimate burden of proving that [the Board] intentionally discriminated against [them]." Evans, 80 F.3d at 959 (citing Burdine, 450 U.S. at 253).

Here, the Board has proffered evidence of a legitimate rationale for the Plaintiffs' terminations— actively challenging and undermining the authority of the Superintendent. (See Defendants' Mot. Dismiss or for Summ. J. Exs. D, E, ECF Nos. 15-7,8). The Board is not required to persuade the Court that the proffered reason for Plaintiffs' terminations was its actual motivation for its decision; but "must merely articulate a justification that is legally sufficient to justify a judgment in its favor." Mereish v. Walker, 359 F.3d 330, 335 (4th Cir. 2004) (quoting Burdine, 450 U.S. at 255) (internal quotation marks omitted). The Court concludes the Board's stated reason constitutes a legitimate, nondiscriminatory reason for Plaintiffs' terminations.

Plaintiffs failed to oppose Defendants' Motion and there is no evidence in the record to demonstrate that the Board's reason for their terminations is pretext for discrimination. Accordingly, Defendants are entitled to summary judgment with respect to all claims of sex discrimination in violation of Title VII.

Moreover, Plaintiffs' claims that they were discriminated against because of their sex in violation of their Fourteenth Amendment right to equal protection are based on the same allegations as their Title VII claims. The McDonnell Douglas burden-shifting scheme of proof used in Title VII cases also applies to similar litigation under § 1983. Beardsley v. Webb, 30 F.3d 524, 529 (4th Cir. 1994). Plaintiffs' above-discussed failure to rebut the Board's legitimate, nondiscriminatory reason for their terminations under Title VII, therefore, is similarly fatal to their claims under § 1983 and § 1985.[5]

Finally, with respect to the remaining state tort claims, the Court declines to exercise supplemental jurisdiction where it has dismissed the federal claims. See 28 U.S.C. § 1367(c) (2012); Carnegie Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988) (stating where a federal claim is dismissed early, federal courts are inclined to dismiss the state law claims without prejudice rather than retain supplemental jurisdiction). Accordingly, the state tort claims (Counts VI-VII) will be dismissed without prejudice.

### III. CONCLUSION

For the foregoing reasons, Fredericksen's Motion for Summary Judgment (ECF No. 16), and the Board Defendants' Motion

---

[5] Section 1985 is the conspiracy counterpart to § 1983. Zombro v. Balt. City Police Dep't, 868 F.2d 1364, 1367 (4th Cir. 1989).

for Summary Judgment (ECF No. 15) will be granted. Counts I-III will be dismissed with prejudice and Counts VI-VII will be dismissed without prejudice. Bresler's Motion for More Definite Statement (ECF No. 14) will be denied as moot.[6] A separate Order will follow.

Entered this 18th day of December, 2014

/s/
_____
George L. Russell, III
United States District Judge

---

[6] Because Plaintiffs' claims against Bresler are based on the same allegations as those against the other Defendants, Bresler will be dismissed from this action. Accordingly, her Motion for More Definite Statement is moot.